## Smith v. Commonwealth.

(Decided January 14, 1913.)

### Appeal from Bell Circiut Court.

1. **Criminal Law—Trial—Admissions to Prevent Continuance—Effect of.**—Statements, contained in an affidavit for continuance on account of absence of a witness, and admitted as the deposition of such witness, being incompetent as evidence, were properly refused to be permitted to be read to the jury.

2. **Forgery—Offense.**—To constitute the offense of uttering a forged check, the check must be a forgery and be also put into circulation.

3. **Forgery—Evidence—Weight and Sufficiency.**—Evidence examined and held sufficient to support verdict of guilt of the charge of uttering a forged check.

MORRIS & JONES, for appellant.

JAMES GARNETT, Attorney-General, and M. M. LOGAN, Assistant Attorney-General, for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

James Smith was indicted, tried, and convicted, in the Bell circuit court, for uttering a forged check. He seeks a reversal here upon two grounds: First, because of error of the trial court in refusing to permit an affidavit to be read as the deposition of an absent witness; and second, because the evidence does not support the verdict.

When the case was called for trial, appellant filed his own affidavit stating that Vic. Dillard and Tom Smith were important and necessary witnesses in the presentation of his defense, and that they were absent without his knowledge, procurement or consent. The affidavit then set out what each would testify to. The court permitted the affidavit, relative to what Vic. Dillard would

swear to, to be read as his deposition, but declined to permit the affidavit to be read as the deposition of Tom Smith. So much thereof as is pertinent is as follows: "That said Tom Smith is not present, but that if he were present he would truthfully state on oath that he would not recognize the handwriting on the check as that of defendant James Smith; that said James Smith informed him that he, James Smith, had been told that a check had been forged on him, Tom Smith, and that the party who forged it had told Vick Dillard that if arrested for writing it that he would accuse said James Smith of writing it; that said Tom Smith told the affiant that if he wrote the check in question that he, Tom Smith, would pay the amount called for in it; that affiant replied that he did not write it and advised Tom Smith not to pay it, that he, James Smith, would stand trial before he would protect another in a crime." The ruling of the court, in refusing to permit this affidavit to be read as the deposition of Tom Smith, was evidently based upon the idea that the statement was not competent as evidence. The affidavit fails to state that Tom Smith was familiar with the handwriting of James Smith. They were brothers, and, naturally, if presumptions were to be indulged, the presumption would be that he was familiar with his handwriting, but not necessarily so. Before Tom Smith, if present in court, would have been permitted to answer the question as to whether the handwriting on the check was that of James Smith, he would have been required to state that he was familiar with his handwriting; if he was not, he would not be a competent witness to pass upon its genuineness. Upon this ground alone, the trial judge was justified in refusing to permit the affidavit to be read; and it is not necessary to enter upon a consideration of the question of the diligence used by appellant in an effort to procure the testimony of his brother.

The next, and indeed the chief, ground relied upon by counsel for appellant for reversal is that the evidence does not support the verdict of guilty. In order to make out its case, it was incumbent upon the Commonwealth to show: First, that the check was forged; and second, that it was passed or put into circulation, which is uttering, by appellant. The witness, Fred Lester, testifies that, in the month of December, 1911, he met appellant in Pineville, and, while they were together in Philpot's restaurant, appellant gave him the check in question and

requested him to get the money on it; that, after some conference over the matter, he took the check, acting under appellant's direction, went to the Hub store and purchased a pair of shoes, at some $3.00 or $4.00, and tendered the check in payment to M. B. Manekin, who was either a clerk or party in interest in the conduct of the store, and received from him the difference between the face of the check and the value of the pair of shoes; and that he delivered the shoes and money to appellant in a barber shop. The check was drawn by Thomas Smith and made payable to and endorsed by Joe Willis. Appellant denies that he gave the check to Lester and makes an issue with him upon every statement made by him relative to the check and its circulation. The truth or falsity of his testimony being for the jury, it cannot be said that there is not sufficient evidence of the "uttering" to support the verdict.

The only remaining question is, does the evidence show that the check was forged? It was drawn by Thomas Smith. The witness, R. E. Samuels, who was assistant cashier of the bank on which the check was drawn and in which Thomas Smith kept his accounts, at the time this check was put into circulation, was familiar with the handwriting and signature of Thomas Smith. He testifies that, when the check was presented for payment by the managers of the Hub store, he declined to pay, because the signature was not that of Thomas Smith, and he so notified Mr. Manekin. No witness testifies that the signature is that of Tom Smith. Appellant, Tom Smith's brother, does not state that the signature is that of Tom Smith, and denies having signed it himself, so that, if the testimony of Lester is true to the effect that appellant gave him the check, with the name or Thomas Smith signed thereto, and the signature is not that of Thomas Smith, it was incumbent upon appellant either to show that Thomas Smith did sign his name to the check or authorize some one else to so sign it for him. With the evidence in this condition, it was incumbent upon appellant to explain how he came into possession of the check; but, instead of attempting to do so, he contents himself with the statement that he did not deliver it to Lester and knew nothing of its existence. The witness, George H. Reese, a handwriting expert, testifies that the name, Thomas Smith, to the check, was written by the same hand that endorsed the name of Joe. Willis on the back of the check, and that both of these

names were written by the same hand that wrote the signature to the affidavit for a continuance in this case; it is not denied that this signature to the affidavit was written by appellant. On this state of facts, the jury was clearly warranted in finding that the signature of Thomas Smith to this check was written by appellant, and he, having testified that he did not write it, it could not have been done by him under the direction of his brother, Thomas Smith. Accepting this evidence as true, which the jury had the right to do, it supports the finding of fact to the effect that the check was forged and was uttered, or put into circulation, by appellant. The offense of uttering a forged check is not only established by direct evidence, amply sufficient to support the verdict, but there are many facts and circumstances brought out in the evidence tending materially to strengthen the testimony of the witnesses for the Commonwealth to the effect that the whole transaction took place exactly as they say it did.

No ground being presented upon which a reversal could be rested, the judgment is affirmed.